[No. D053807. Fourth Dist., Div. One. Dec. 17, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS MORALES HERNANDEZ, Defendant and Appellant.

## COUNSEL

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Chandra E. Appell and Marcella McLaughlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McINTYRE, J.**—A jury convicted 21-year-old Carlos Morales Hernandez of sodomy and rape, and as to both counts found true the special allegations that he (1) committed the crimes during the commission of a burglary with the intent to commit a sex crime; (2) personally used a dangerous and deadly

weapon; and (3) used a deadly weapon. The trial court sentenced Hernandez to 50 years to life, plus a consecutive eight-year term.

Hernandez argues that he is entitled to a new trial because the court erred in failing to instruct the jury on his theory of the defense, specifically, his reasonable but mistaken belief that the victim consented, and that the jury was required to unanimously agree on the elements triggering the life sentences under the one strike law, Penal Code section 667.61. (Undesignated statutory references are to the Penal Code.) Following oral argument, we requested and received supplemental briefing on the requirements for pleading the burglary circumstance under section 667.61, subdivisions (a) and (d)(4). We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim was the main witness for the prosecution. She lived in a one-bedroom cottage with her two-year-old daughter. The victim had seen Hernandez two or three times at church where he was introduced as "Carlos." She had also seen Hernandez in her neighborhood, but had no direct contact with him.

On August 4, 2007, the victim returned home from work around 7:00 p.m. and began cooking dinner for her daughter's father, Rufino Perez. After dinner, Perez stayed to talk. The victim fell asleep on the bed with her daughter. She testified that Perez always locked the outside door when he left.

A noise awakened the victim early the following morning. She saw a shadow and demanded, "Who's there?" A person moved toward her saying, "Be quiet. I'm Carlos." She recognized the voice and face as belonging to Hernandez. The victim reached for her cellular and landline phones which were on a table next to the bed. Hernandez grabbed the phones and threw them aside saying, "Don't try it."

Hernandez told the victim "that he had killed and he was fleeing . . . from the police because he had killed a policeman." Thinking that Hernandez wanted help, the victim indicated that he could stay on the sofa in the living room. However, Hernandez said that he "wanted to be with" her. The victim was unsure what Hernandez wanted until he started to touch her feet and legs. At that point, she realized that Hernandez was trying to talk her into having sex with him. Hernandez was carrying a two-foot-long metal object later described by Hernandez as an exercise bar. She also testified that Hernandez stunk of alcohol. The victim was afraid for herself and her daughter.

Hernandez repeated his demand that the victim let him be with her "just once," and she asked him to respect her. She attempted to cover herself with the blankets and cross her feet, which angered Hernandez. He gave her 10 minutes to give in and let him have sex with her or "something bad was going to happen." Hernandez held the metal object near his chest. Meanwhile, the victim's daughter woke up and moved toward the victim to nurse. She covered her daughter so she could not see Hernandez.

The victim's daughter began to cry. Hernandez initially refused to let the victim prepare a bottle for the child, then grabbed the victim and took her to the kitchen. Hernandez repeatedly told the victim to keep her daughter quiet. Finally the victim said, "Let me give her a bottle and then do whatever you want with me." The victim thought that Hernandez was going to hurt her or her daughter and therefore believed she had no choice.

They returned to the bedroom and the victim gave her daughter the bottle. Hernandez would not leave her alone, played with her body and took off her panties. While the victim tried to quiet the child, Hernandez sodomized her.

Hernandez turned the victim on her back, but she got on the floor so her daughter could not see what was happening. The victim felt the metal rod on the floor and pushed it farther under the bed. Hernandez lost his erection and was unable to penetrate the victim's vagina. In frustration, he hit the floor next to the victim's face. Hernandez tried to suck the victim's breasts, but she asked him not to do it because her daughter was still breastfeeding. At trial, the victim had trouble remembering whether Hernandez was able to penetrate her vagina or ejaculated in her genital area, but testified that "yes, he did put it in."

After ejaculating, Hernandez got off the victim and said, "Forgive me. Forgive me. . . . I don't know why I came here to do that." He also told her that something bad would happen if she called the police. Hernandez took the metal bar and left.

The victim called Perez for help, and he called the police. The investigating officer found the victim on the bed in the fetal position crying. She cried throughout the interview, making it difficult for the officer to get a statement. The victim agreed to undergo a sexual assault examination. Results of DNA analysis showed that Hernandez was the likely contributor of the semen taken from the victim's genital area. The police investigation revealed pry marks around the door frame of the victim's house.

Police arrested Hernandez at work. Detective Steve Bernier interviewed him with the help of an interpreter. The prosecution played a video of the

interview at trial. When told he would be tested for drugs, Hernandez stated that the test would likely show the presence of "crystal", marijuana and beer. He also admitted using $20 worth of "crystal" and told Bernier that he was "crazy" on beer and crystal when he went to the victim's apartment. He also stated he went there because he "wanted her" and had desired her for about six months. Throughout the interview Hernandez maintained that the victim consented to having sex with him, acknowledging that he threatened to hurt her "just once." He told Bernier that he lied about killing someone to scare the victim into submission. He also acknowledged carrying the metal exercise bar and agreed to accompany police to his residence to retrieve it. Hernandez admitted sodomizing the victim but said that she told him to "do it" to her.

Hernandez told Detective Bernier that he wanted to repay the victim for what he did. At the end of the interview, Hernandez dictated a note which the interpreter transcribed in English. The prosecution read the note to the jury over defense counsel's objection. The note read: "[F]orgive me for committing an error and because I didn't think before I committed the error. Because of that moment, the passion I had for you, I committed this stupidity. Forgive me. I want you to accept my apology and forgive me. Forgive me. Could you please let me know that you have forgiven me? Could you please call my mother and let her know where I am? Please have everyone pray for me. Carlos."

## DISCUSSION

### I. *The* Mayberry *Instruction*

Hernandez argues that the court violated his constitutional right to present a defense by denying his request to include the mistake of fact portion of CALCRIM Nos. 1000 and 1030 known as the *Mayberry* instruction. (See *People v. Williams* 1992) 4 Cal.4th 354, 360 [14 Cal.Rptr.2d 441, 841 P.2d 961] (*Williams*); *People v. Mayberry* 1975) 15 Cal.3d 143, 153–158 [125 Cal.Rptr. 745, 542 P.2d 1337]; see also CALJIC former No. 10.65.) The requested portion of CALCRIM No. 1000 reads: "The defendant is not guilty of rape if he actually and reasonably believed that the woman consented to the intercourse. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the woman consented. If the People have not met this burden, you must find the defendant not guilty." Similarly, the requested part of CALCRIM No. 1030 reads: "The defendant is not guilty of forcible sodomy if (he/she) actually and reasonably believed that the other person consented to the act. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the other person consented. If the

People have not met this burden, you must find the defendant not guilty." We conclude that the court properly denied Hernandez's request.

In *Williams*, the Supreme Court acknowledged that the intermediate appellate courts had struggled with the question of when the *Mayberry* instruction was required. (*Williams, supra*, 4 Cal.4th at p. 360, fn. 5.) It clarified the analyses most consistent with *Mayberry*, citing principles that apply regardless of whether defendant requested the instruction. The court concluded that "in determining whether the *Mayberry* instruction should be given, the trial court must examine whether there is substantial evidence that the defendant honestly and reasonably, but mistakenly, believed that the victim consented to sexual intercourse." (*Williams, supra*, at pp. 360–361.)

The Supreme Court explained that "[t]he *Mayberry* defense has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented . . . . In order to satisfy this component, a defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent. [¶] In addition, the defendant must satisfy the objective component, which asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a *Mayberry* instruction. [Citations.]" (*Williams, supra*, 4 Cal.4th at pp. 360–361, fn. omitted.)

Citing earlier pronouncements on the issue, the *Williams* court reiterated that trial courts are .required to give a requested *Mayberry* instruction "only when the defense is supported by 'substantial evidence,' that is, evidence sufficient to 'deserve consideration by the jury,' not 'whenever any evidence is presented, no matter how weak.' " (*Williams, supra*, 4 Cal.4th at p. 361, italics added.) The court emphasized that the focus remains whether "there is *substantial evidence* that the defendant honestly and reasonably, but mistakenly, believed that the victim consented to sexual intercourse." (*Ibid.*, italics added.)

Hernandez maintains the following facts were sufficient to entitle him to the *Mayberry* instruction: (1) the victim knew him from church; (2) he made clear his desires by caressing her, saying he wanted to be with her, and trying to persuade her to have sex with him; (3) he smelled of alcohol and appeared to be drunk and excited; (4) he never swung or otherwise threatened the victim with the metal bar and eventually put it on the floor; (5) the victim

told him that if he let her give her baby a bottle, he could do whatever he wanted with her; and (6) she acquiesced to his repeated requests for sexual activity.

Although these facts may support an argument that Hernandez *subjectively* believed the victim consented to sexual intercourse, they do not satisfy the *objective* component of the *Williams* analysis. The conduct Hernandez now argues was equivocal must be viewed in the context of the circumstances surrounding the conduct he described. The record shows that Hernandez broke into the home that the victim shared with her two-year-old daughter in the early hours of the morning carrying a two-foot-long metal bar. He said that he wanted to be with her. Hernandez threw the victim's phones out of reach, told her he had killed a policeman, held the metal rod near his chest, and gave her 10 minutes to give in to his demands for sex or "something bad was going to happen." The victim attempted to cover herself and her daughter with the blankets and crossed her feet after he began touching her feet and legs. She feared for herself and her daughter and repeatedly attempted to protect the child. On this record, the trial court properly ruled that, viewed objectively, it was unreasonable as a matter of law for Hernandez to believe the victim consented to sexual intercourse. Accordingly, the court did not err in refusing to instruct the jury with the requested portions of CALCRIM Nos. 1000 and 1030.

In reaching the conclusion that Hernandez's belief in the victim's consent was unreasonable, we distinguish this case from cases cited in dicta in *Williams* "in which there [was] evidence of equivocal conduct that could be *reasonably* and in good faith relied on to form a mistaken belief of consent, but also evidence that this equivocal conduct occurred only after the defendant's exercise or threat of 'force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another.' " (*Williams, supra*, 4 Cal.4th at p. 364, citing § 261, subd. (a)(2) & *People v. Burnham* 1986) 176 Cal.App.3d 1134, 1142 [222 Cal.Rptr. 630] [*Mayberry* instruction required even where evidence showed that the wife's equivocal conduct regarding attempted penetration by a canine penis followed the admitted severe beating by her husband].) To guide the lower courts, the *Williams* court explained that regardless of "modern sensibilities," trial judges "must give the *Mayberry* instruction whenever there is substantial evidence of equivocal conduct that could be reasonably and in good faith relied on to form a mistaken belief of consent, despite the alleged temporal context in which that equivocal conduct occurred." (*Williams, supra*, 4 Cal.4th at p. 364.) Because there is no substantial evidence in this case to support Hernandez's argument that he *reasonably* relied on what he claimed to be the victim's equivocal conduct to form the basis of his mistaken belief that she

consented to the sexual assault, it was unnecessary for the court to submit the question of reasonable belief to the jury.

## II. *The Unanimity Instruction*

■ The Legislature enacted the one strike law "to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction." (*People v. Palmore* 2000) 79 Cal.App.4th 1290, 1296 [94 Cal.Rptr.2d 784] (*Palmore*), citing Sen. Com. on Judiciary, Analysis of Sen. Bill No. 26 (1993–1994 1st Ex. Sess.) as amended May 4, 1994, p. 15.) Section 667.61, subdivisions (a) and (d) prescribe a sentence of 25 years to life where the accused is convicted of specified sex offenses "where the nature or method of the sex offense 'place[d] the victim in a position of *elevated vulnerability*.' [Citation.]" (*Palmore, supra*, 79 Cal.App.4th at pp. 1295–1296, citing Assem. Com. on Public Safety, Analysis of Sen. Bill No. 26 (1993–1994 1st Ex. Sess.) as amended May 25, 1994, pp. 2–3, italics added.) A true finding on a section 667.61, subdivisions (a) and (d)(4) allegation results in a sentence of 25 years to life where, as here, the accused is convicted of forcible sodomy and rape under the aggravating circumstance that those crimes were committed during the commission of residential burglary "with intent to commit an offense specified in subdivision (c)."

Hernandez contends that the trial court erred in failing to instruct the jury that the one strike allegations in counts 1 and 2 require juror unanimity regarding the predicate acts. His argument suggests that the predicate acts did not consist of burglary, but forcible sodomy and rape, two of nine sexual offenses listed in section 667.61, subdivision (c), which were the alleged *objects* of his intent to enter the victim's apartment. In supplemental briefing, Hernandez expands this point, arguing that the words "an offense" in section 667.61, subdivision (d)(4) mean the prosecutor must allege a *specific sex* offense listed in subdivision (c).

The trial court instructed the jury with CALCRIM No. 3178 as follows, giving the jury the option of finding that Hernandez committed burglary with the intent to commit one or two section 667.61, subdivision (c) offenses: "If . . . you find the defendant guilty of the crimes charged in counts one and two, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant committed the crime during the commission of burglary with the intent to commit *sodomy by use of force and/or* [*forcible*] *rape*. [¶] You must decide whether the People have proved the allegation for each crime and return a separate finding for each crime. [¶] To prove this allegation, the People must prove that; one, the defendant

entered an inhabited house; two, when the defendant entered the house, he intended to commit *sodomy by use of force and/or [forcible] rape* and; three, after the defendant entered the house, he committed sodomy by use of force and[/]or *[forcible]* rape. [¶] . . . [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved." (Italics added.)

Likewise, the verdict forms for count 1 for sodomy and count 2 for rape included the following language: "And we further find the allegation that said defendant, CARLOS MORALES HERNANDEZ, did so during the commission of a burglary as defined in Section 460(a) with the intent to commit a forcible sex crime, in violation of Penal Code section 261(a)(2) [rape] *or* 286(c)(2) [sodomy], within the meaning of PENAL CODE SECTION 667.61(a)(c)(d) to be true." (Italics added.) The jury found the allegations to be true.

Hernandez contends the trial court erred in failing to instruct the jury sua sponte with a modified version of CALCRIM No. 3500, the unanimity instruction, to ensure that all the jurors agreed on the specific section 667.61, subdivision (c) offense Hernandez intended to commit when he entered the victim's house. He also argues that given the ambiguous language of the verdict forms, the error was prejudicial. Hernandez explains that "without a unanimity instruction and without proper verdict forms, some of the jurors may have believed Mr. Hernandez guilty of burglary with the specific intent of *committing* sodomy while other jurors believed him guilty of burglary with the specific intent of committing *rape*, resulting in no unanimous true finding." We reject Hernandez's contention and conclude that burglary is the predicate act or aggravating circumstance that triggered the life sentence under section 667.61, subdivisions (a) and (d)(4), and, under well-established legal principles, the jury was not required to unanimously agree on the specific sex offense or offenses that were the object of his intent when he entered the victim's residence.

■ A criminal verdict must be unanimous with the members of the jury agreeing that the defendant is guilty of a specific crime. (*People v. Russo* 2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641].) Thus, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid.*) The unanimity instruction " 'is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]" (*Ibid.*) "The same

reasoning should, in general, apply to enhancements as well as the crimes that underlie them." (*People v. Robbins* 1989) 209 Cal.App.3d 261, 265 [257 Cal.Rptr. 60].)

The unanimity rule does not apply where the information charges a discrete crime but leaves room for disagreement on the theory of how the crime was committed. (*People v. Russo, supra*, 25 Cal.4th at p. 1132.) This exception applies to burglary, where the prosecution must prove entry with a specified intent, that is, entry "with intent to commit grand or petit larceny or any felony . . . ." (§ 459.) Thus, "[i]f . . . the evidence showed a single entry, but possible uncertainty as to the exact burglarious intent, that uncertainty would involve only the theory of the case and not require the unanimity instruction. [Citation.]" (25 Cal.4th at p. 1133.) In other words, where burglary is the charged offense, the jury is not required to agree on which specific intent the burglar harbored at the time he entered the residence.

Nothing in the transcript of the discussions regarding CALCRIM No. 3178 suggests that the court and counsel considered the need for a unanimity instruction. On appeal, neither party adequately addresses how the unanimity rule and burglary exception interact in section 667.61.

We begin by rejecting the Attorney General's claim that Hernandez forfeited his argument on appeal by failing to request a unanimity instruction or object to the instructions read to the jury. As he concedes, we "may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259.) There can be no doubt that an alleged error involving instructions on the one strike law potentially affects Hernandez's substantial rights.

Next, we note that "[g]enerally, the trial court's reliance on erroneous reasoning is no basis for reversal if the decision is correct. [Citation.] We review the correctness of the challenged ruling, not of the analysis used to reach it." (*In re Baraka H.* 1992) 6 Cal.App.4th 1039, 1045 [8 Cal.Rptr.2d 221].)

Finally, we determine which predicate act or aggravated circumstance the Legislature intended to trigger a sentence of 25 years to life under section 667.61, subdivisions (a) and (d)(4). In determining legislative intent, we " ' "turn[] first to the words themselves for the answer" [citations], giving to them "their ordinary and generally accepted meaning" [citation]. Moreover, "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citation.] . . . Finally, we keep in mind that " '[t]he defendant is

entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' " [Citations.]' [Citation.]" (*Palmore, supra*, 79 Cal.App.4th at p. 1295.)

█    The structure of section 667.61, subdivisions (a) and (d) demonstrates that burglary is one of *five* possible aggravating circumstances that trigger the sentence of 25 years to life. The other subdivision (d) circumstances include: (1) previous conviction of a sex offense listed in section 667.61, subdivision (c); (2) kidnapping of the victim of the present offense; (3) infliction of aggravated mayhem or torture on the victim of the present offense; and (4) commission of the present sex offense in concert and in the commission of any act described in subdivision (d)(2), (3) or (4).

The burglary circumstance is different from the other circumstances listed in section 667.61, subdivision (d) because it requires proof of specific intent on entry to a residence. Section 459, the general burglary statute, requires proof of entry "with intent to commit grand or petit larceny or *any felony* . . . ." (Italics added.) In section 667.61, the Legislature expressly narrowed the required intent at the time of entry to include not the specific intent to commit "any felony," but the specific intent to commit "an offense"—that is, any felony sex offense—listed in section 667.61, subdivision (c). Language limiting the type of felonious intent to be proved is consistent with the purpose of 667.61 to increase punishment to a life sentence where the way the defendant committed a sex offense placed the victim in a position of elevated vulnerability. (*Palmore, supra*, 79 Cal.App.4th at p. 1296.) There is no legally significant difference in the words "any felony" in section 459 and the words "an offense" in section 667.61, subdivision (d)(4). Nothing in the language of section 667.61 negates our conclusion that the burglary exception to the unanimity requirement applies here. Thus, the question whether Hernandez entered the victim's residence with the intent to commit forcible sodomy or rape involves only the theory of how the crime was committed, and the jury was not required to agree unanimously that he entered with the intent to commit one or both of those sex offenses. (*People v. Russo, supra*, 25 Cal.4th at pp. 1132–1133.)

Because we conclude that the relevant predicate act was burglary, not the sex offenses alleged as objects of Hernandez's specific intent on entering the residence, we reject as meritless his claim that the jury's true finding violated *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856], *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348], or *Richardson v. United States* (1999) 526 U.S. 813 [143 L.Ed.2d 985, 119 S.Ct. 1707].

## DISPOSITION

The judgment is affirmed.

Haller, Acting P. J., and Aaron, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 2010, S179732.