Filed 11/21/24

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>JOVAN JONES,<br><br>        Defendant and Appellant. | A168930<br><br>(San Francisco City & County<br>Super. Ct. No. CRI-13001219) |

A jury convicted defendant Jovan Jones of several felonies, including rape, sexual penetration, and assault with intent to commit a sex offense during a first degree burglary, after he sexually assaulted a woman in her apartment and stole her backpack.  The jury also found true allegations under the One Strike law, Penal Code[1] section 667.61, that he committed two of the sex offenses during a burglary with intent to commit a sex offense and personally used a dangerous or deadly weapon in connection with those offenses.  He was sentenced to 25 years to life plus seven years, four months in prison.

On appeal, Jones makes two claims of error related to an alternative theory of burglary the prosecution raised after the close of evidence.  This

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C and II.D.

[1] All further statutory references are to the Penal Code unless otherwise noted.

theory was based on Jones's entry into the woman's bedroom rather than her apartment. Jones also claims the prosecutor erroneously suggested during closing argument that the presumption of innocence was over. Finally, Jones claims, and the Attorney General concedes, that a full resentencing is required because a three-year enhancement was unauthorized. We agree that a full resentencing is required but reject Jones's other substantive claims. Accordingly, we strike the unauthorized enhancement and remand for resentencing, order certain clerical errors corrected, and otherwise affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

A.    *Facts*

Around 8:00 p.m. on January 12, 2013, 26-year-old C.M. walked home from a friend's place to her Telegraph Hill apartment.[2] During the walk, she talked to her mother on her cell phone. When C.M. reached her apartment complex, she went up the stairs to her unit.

Still on the phone with her mother, C.M. unlocked the door to her apartment. C.M. then noticed there was a person behind her. She quickly went inside and tried to close the door behind her, but the person, later identified as 25-year-old Jones, "manage[d] to shove his way in." C.M.'s mother heard her daughter screaming and asked what was happening, but C.M. did not respond because she had dropped her phone. C.M.'s mother then hung up and repeatedly tried to call her daughter back while a friend who was with the mother called the police.

---

[2] Jones was initially charged within days of the incident, but the trial did not begin until late 2022. On appeal, he does not raise any claims involving the nearly 10-year delay.

The front door to C.M.'s apartment opened directly into the kitchen area, with a small table against the room's left wall.[3] On the same wall was an opening to the enclosed bedroom, which contained a bed and a futon, but there was no door between the two spaces. At trial, C.M. described the apartment as a "studio."

C.M. testified that once inside the apartment, Jones "basically wrestle[d her] to the ground" near the kitchen area, so that she was lying face up on top of the backpack she was wearing. Jones put his hands around her neck, and she fought back. He then tried to "forcefully kiss [her]." Jones told C.M. to stop screaming and threatened to "shoot" her and "stab" her if she was not quiet. At one point, he said something like, "You never recognize me; you never pay attention to me," which C.M. found "confusing" since she had never seen him before.

While Jones still had C.M. "pinned down" on the ground, he "put a hand down [her] pants" and penetrated her vagina with his fingers. Jones told her he "need[ed] money to feed his children" and would not hurt her if she gave him money and stopped making noise. She told him he could take "anything [he] need[ed]."

Eventually, Jones let C.M. stand up and moved her against the kitchen table. C.M. took off her backpack and attempted to give Jones some of the property in it, but he was "[p]ushed up . . . behind [her]" and she could not move freely. Still pressed against her body, he took the backpack from her and put it on.

C.M. testified that Jones then pulled her pants down to her ankles and inserted two fingers into her vagina. He also told her he had a knife and

---

[3] Various photographs of C.M.'s apartment were admitted into evidence, only some of which are in the record before us.

3

produced a pocketknife, which he opened and put on the table where she could see it. C.M. testified that at some point, Jones held the knife "up against [her] leg to tell [her], you know, I don't want to hurt you, but . . . essentially, do as I say."

Jones asked C.M. if she was "clean," and she lied and said she "had many STDs." He asked if she had condoms, and she said she did not. He then "proceeded to try to have sex with [her]," but he was unable to insert his penis into her vagina. C.M. testified that Jones told her she "ha[d] to say this is ok" as if he were seeking consent, but she was "sobbing" and did not reply.

After his initial attempts at penetration were unsuccessful, Jones bent C.M. over the kitchen table and was able to insert his penis into her vagina. When asked how long this penetration lasted, C.M. responded, "I don't—[a] few seconds—I don't know. Yeah. Probably not a long time." Jones was unable to maintain penetration, at which point he said, "Go in here," and "push[ed] her into the bedroom."

In the bedroom, Jones pushed C.M. facedown onto the futon. He then successfully penetrated her vagina with his penis. C.M. testified that Jones repeatedly "force[d] himself inside of [her], would fall out, again, try again[, a]nd this happened about four times." She did not see the knife while in the bedroom.

Meanwhile, a police officer arrived outside the apartment in response to the call initiated by C.M.'s mother and inspected the area with his flashlight. C.M. noticed the light through the sliding glass door that led from her bedroom to a balcony. Jones apparently noticed as well, because he told her, "Hey, you have to be with me on this. Don't tell the cops anything. . . . I know where you live. I'll come find you." C.M. testified that around this

time, Jones "essentially back[ed] off," which she "assumed . . . was to ejaculate," and was no longer on top of her.

C.M. got up, exited to the balcony, and saw the police officer outside. Meanwhile, Jones, who was still in the bedroom, started to "go back into the kitchen." C.M. communicated to the officer that someone was in her apartment and he was "going around to the front." Jones initially evaded the other officers who responded but was soon captured nearby, still wearing C.M.'s backpack.

Later that night, a forensic examination was performed on C.M. She had injuries to her neck consistent with strangulation and defensive wounds on her hands. She also had injuries to her vaginal area, including scratch-like abrasions. Jones's DNA was found in her vagina.

### B. Procedural History

The operative information charged Jones with seven felony counts for his assault of C.M.[4] He was charged with one count of assault with intent to commit a sex offense during a first degree burglary (aggravated burglary); two counts of sexual penetration by force, one "on the kitchen floor" and one "standing in the kitchen"; one count of attempted rape by force "in the kitchen"; two counts of rape by force, one "in the kitchen" and one "in the bedroom"; and one count of first degree robbery.[5] It was also alleged under

---

[4] Based on a separate incident involving a different woman, Jones was also charged with second degree robbery under section 211 and receiving stolen property under section 496, subdivision (a). The trial court dismissed the latter count before it was submitted to the jury, and the jury acquitted Jones of the former count.

[5] The charges were brought under sections 220, subdivision (b) (aggravated burglary), 289, subdivision (a)(1)(A) (sexual penetration), 261, subdivision (a)(2), and 664 (attempted rape), 261, subdivision (a)(2) (rape), and 211 (robbery).

5

the One Strike law that when Jones committed both counts of sexual penetration and both counts of rape, he was in the course of a burglary with intent to commit a sex offense (burglary circumstance) and personally used a dangerous or deadly weapon (weapon circumstance).[6]

At the prosecution's request, after the close of evidence the trial court dismissed the count of attempted rape in the kitchen. The jury then convicted Jones of aggravated burglary, sexual penetration standing in the kitchen, rape in the bedroom, and robbery. It found true the burglary and weapon circumstances accompanying this sexual-penetration count, and it found true the burglary circumstance and not true the weapon circumstance accompanying this rape count. The jury also found Jones guilty of the lesser included offenses of attempted sexual penetration on the kitchen floor and attempted rape in the kitchen and found true in connection with both counts the lesser allegation that Jones was armed with a deadly weapon during the offense.[7]

In September 2023, the trial court sentenced Jones to a total term of 25 years to life plus seven years, four months in prison. The indeterminate portion of the sentence consisted of a term of 25 years to life for sexual penetration based on the burglary circumstance, a concurrent term of 15 years to life for the same count based on the weapon circumstance, and a concurrent term of 25 years to life for rape based on the burglary circumstance. The determinate portion of the sentence was composed of the

---

[6] The One Strike allegations were made under section 667.61, subdivisions (d)(4) (burglary circumstance) and (e)(3) (weapon circumstance).

[7] As we discuss in more detail below, the arming allegations were found true under section 12022.3, subdivision (b). The One Strike allegations do not apply to either attempted sexual penetration or attempted rape. (See § 667.61, subds. (c)–(e).)

low term of 18 months for attempted rape, plus the low term of three years for the accompanying arming enhancement, a consecutive low term of 18 months for the attempted sexual penetration, and a consecutive term of 16 months, one-third the midterm, for the robbery. Finally, the court struck in the interest of justice the arming enhancement attached to the conviction of attempted sexual penetration, and it imposed and stayed a term of seven years to life for aggravated burglary.

## II.
### DISCUSSION

### A. *Both Alleged Errors Involving the Prosecution's Alternative Theory of Burglary Were Harmless.*

Jones claims that after the close of evidence the prosecution "ambushed" him with a new theory of burglary, based on his entry into C.M.'s bedroom instead of his entry into her apartment. He also claims the trial court erred by denying his request for a unanimity instruction requiring the jury to agree on one entry to convict him of aggravated burglary and the burglary circumstances.

We conclude that even if the alleged errors occurred, they were both harmless beyond a reasonable doubt based on the jury's true finding on the burglary circumstance attached to the count of sexual penetration standing in the kitchen.[8] The burglary circumstance required proof that Jones committed sexual penetration "*during* the commission of a burglary of the first degree . . . with intent to commit [a specified sexual] offense." (§ 667.61, subd. (d)(4), italics added; see § 667.61, subd. (c).) Thus, by finding this circumstance true, the jurors necessarily agreed that Jones entered C.M.'s apartment with the requisite intent to commit a sexual offense, since the

_____

[8] At our request, the parties submitted supplemental briefing on this issue.

entry into her bedroom did not occur until after the sexual penetration in the kitchen. Accordingly, both claims fail.

### 1. Additional facts

The operative information did not identify a specific entry as the basis for the count of aggravated burglary or the burglary circumstances accompanying the sexual-penetration and rape counts. At the conference on jury instructions, Jones requested a mistake-of-fact instruction on the theory that "he was confused and thought he knew [C.M.]" when he entered her apartment. He argued that if he did not have the specific intent to commit a sexual offense during that entry, he would be not guilty of aggravated burglary or the burglary circumstances.

Later, while discussing the instruction on aggravated burglary, the prosecutor stated, "I want the jurors to understand that the burglary can be the entering of a building *or* a room within the building." (Italics added.) Jones's trial counsel objected on the basis that C.M.'s apartment was a studio apartment and although there was "a doorway in terms of an arch" to the bed area, there was no separate bedroom. The prosecutor responded that the bed area qualified as a separate room under governing case law.

The trial court expressed frustration that the possibility of different entries came up late, saying that it "never even knew this was one of the issues in this case" until the discussion of jury instructions began. After the prosecutor protested that she previously provided the relevant case law and said the defense "knew exactly what [she] was talking about," Jones's trial counsel responded, "No way. I would never have even thought you would ask for the bedroom to be a separate entry, when it's a wide open studio. That did not even cross my mind."

8

The trial court ultimately ruled that it would instruct the jury on the concept of an entry into a different room potentially qualifying as a separate entry for purposes of burglary. In response, Jones requested a pinpoint definition of "room" as being "[a]n area within a building . . . if there is some designated boundary, such as a partition, where the occupant could expect significant additional privacy and security, distinct from what the enclosing structure itself provides." The court granted the request except as to the clause about a "partition."

The jury was instructed on burglary under CALCRIM No. 1700 as follows: "To prove that Jovan Jones is guilty of first degree burglary, as referred to in instruction 890 related to Count 1, assault with intent to commit rape or sexual penetration while committing first degree burglary [aggravated burglary], the People must prove that: [¶] 1. Jovan Jones entered a building or a room within a building; [¶] and [¶] 2. When he entered a building, or a room within a building[,] he intended to commit rape or sexual penetration." The instruction also provided that "[f]irst degree burglary is the burglary of an inhabited house or room within an inhabited house" and that "[a]n area within a building is considered a 'room' for purposes of burglary if there is some designated boundary where the occupant could expect significant additional privacy and security, distinct from what the enclosing structure itself provides."[9]

<hr />

[9] The instruction also informed the jurors that they did "not all have to agree on which one of these sex crimes Jovan Jones intended" during the entry. Jones does not dispute that this was a correct statement of the law. (See *People v. Hernandez* (2009) 180 Cal.App.4th 337, 349 [for burglary circumstance, no unanimity required as to intended sex offense]; see also *People v. Russo* (2001) 25 Cal.4th 1124, 1132–1133 [no unanimity required for "exact burglarious intent"].)

9

The jury was also instructed under CALCRIM No. 3178 that to establish the burglary circumstances, "the People must prove that: [¶] 1. Jovan Jones entered an inhabited house, or room within a house[; ¶] 2. When Jovan Jones entered the house or room inside the house, he intended to commit rape or forcible rape or forcible sexual penetration; [¶] AND [¶] 3. After Jovan Jones entered the house or room within the house, he committed forcible rape or forcible sexual penetration before he escaped to a place of temporary safety.  A house is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of the alleged entry. [¶] . . . [¶] An area within a building is considered a 'room' for the purposes of burglary if there is some designated boundary where the occupant could expect significant additional privacy and security, distinct from what the enclosing structure itself provides."

At some point, the prosecutor apparently unsuccessfully requested a "special instruction that there be no unanimous agreement on entry or forming of the intent" for burglary.[10]  After the jury was instructed, Jones stated "for the record" that he "disagree[d] that the jury does not have to be unanimous on entry."  The court indicated that Jones's request was too late and a unanimity instruction "was not necessary."

During closing arguments, the prosecutor argued as to the count of aggravated burglary that Jones had to have entered into C.M.'s apartment or her bedroom "with the specific intent to rape or sexually penetrate" her, but that the jurors did not "all have to exactly agree on when [he] formed the specific intent to commit rape or sexual penetration.  It could have been when he entered into the apartment or after he was already inside but before he

---

[10] We lack clarity because the trial court and the parties discussed several issues in emails that are not in our record.

pushed [C.M.] into her bedroom." Similarly, the prosecutor argued that there were two possible entries that could support the burglary circumstances.

Jones's trial counsel took the position that "[t]here is one entry here, and that's through the front door, the locked door." He argued that the prosecution had to prove that Jones had the "specific intent to commit rape or digital penetration" during the "entry into [C.M.'s] studio apartment," which it could not do "because Mr. Jones was so confused and so delusional based on his drug use that there was no bad intent here." Counsel argued, "So the prosecution is trying to give you a different theory now. [The prosecution is] . . . trying to say . . . that it's not just the building or [C.M.'s] apartment, but it was intent before [Jones] went into the area that's being described as a, quote, unquote, bedroom." Counsel then argued at length that the bedroom area did not qualify as a separate room for purposes of an entry establishing burglary. In rebuttal, the prosecutor reiterated that there were two entries and it was sufficient if Jones had the requisite intent when he entered the bedroom.

After the jury returned its verdicts, Jones moved for a new trial. He claimed the trial court "erroneously allowed the prosecution to change its theory of burglary after the close of the evidence and after the defense rested," which "enabled the prosecution to argue that—though [he] may not have formed the sexual intent upon entry into the studio—[he] made a second entry into another separate 'room' (with the required intent), even though no boundary or partition separated the area inside of the studio."

The motion for a new trial also included two juror declarations. Both jurors declared that they "believed that the evidence did not show that Jovan Jones had the intent to commit a sexual offense when he entered the studio apartment" and that "if sexual intent was formed in [his] mind at any time, it

11

was formed <u>after</u> he had already entered the apartment." The jurors also declared that the jury "never agreed that the bedroom was a separate room" and they both believed it was not.

The trial court denied the motion for a new trial. In doing so, it reaffirmed its legal determination that the jury could find, and the People were entitled to argue, that C.M.'s bedroom qualified as a separate room for purposes of a burglary entry. It also determined the two juror declarations were inadmissible under Evidence Code section 1150 because they constituted evidence of the jurors' "thought processes."

### 2. Analysis

Jones makes two claims of error related to the alternative theory of burglary based on an entry into the bedroom. First, relying on *Sheppard v. Rees* (9th Cir. 1990) 909 F.2d 1234 (*Sheppard*), he claims the prosecution "unfairly ambushed" him with this theory in violation of his constitutional rights to notice, due process, and a fair trial. *Sheppard* held that a defendant's Sixth Amendment right to notice of the charges against him was violated where he was tried exclusively on a theory of premeditated murder, but the prosecution successfully requested instructions on robbery and felony murder right before closing arguments. (*Id.* at pp. 1235–1236.)

Second, Jones claims the trial court erred by not giving a unanimity instruction requiring the jury to agree on one entry. In criminal cases, "the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo, supra*, 25 Cal.4th at p. 1132.) In *Russo*, our state Supreme Court indicated that for the crime of burglary, "[i]f the evidence showed two

12

different entries with burglarious intent, . . . the jury would have to unanimously find the defendant guilty of at least one of those acts," whereas if "the evidence showed a single entry, but possible uncertainty as to the exact burglarious intent," no unanimity instruction would be required. (*Id.* at pp. 1132–1133.)

Both of Jones's claims implicate federal constitutional rights, which would normally require us to assess the purported errors' prejudicial effect under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). Although there is a split of authority on whether the *Chapman* standard applies to the failure to give a unanimity instruction, we agree with the majority view that it does. (E.g., *People v. Fish* (2024) 102 Cal.App.5th 730, 738; *People v. Hernandez* (2013) 217 Cal.App.4th 559, 576–577; but see *People v. Vargas* (2001) 91 Cal.App.4th 506, 561–562.)

While Jones agrees that *Chapman* applies to his claim of instructional error, he argues that the prosecution's alleged "ambush" was structural error under *Sheppard* and requires reversal of all his convictions without regard to prejudice. Certain "errors of a constitutional dimension are [not] amenable to harmless error analysis" and so fundamentally affect a trial's fairness that they require per se reversal. (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1073.) These include the denial of the right to present a defense, improper discrimination in jury selection, and the denial of counsel. (*Ibid.*) *Sheppard* held that the last-minute ambush of the defendant with a theory of felony murder was also structural error. (*Sheppard*, *supra*, 909 F.2d at p. 1237.) The new theory "was neither subject to adversarial testing, nor defined in advance of the proceeding," leaving the defendant unable to defend against it "during the evidentiary phase of the trial." (*Ibid.*) Because the error thus "tainted" the record, it could not be found harmless based on the evidence

13

supporting the theory of felony murder. (*Ibid.*) Nor could it be found harmless based on "the seemingly overwhelming weight of the evidence pointing to [the defendant's] guilt of premeditated murder," since it was "impossible to tell which theory of culpability the jury followed in reaching a general verdict." (*Id.* at pp. 1237–1238.)

Here, in contrast, it *is* possible to tell that the jury unanimously agreed that Jones entered the apartment with the requisite sexual intent, rendering both the prosecution's late identification of the bedroom-entry theory and the omission of a unanimity instruction harmless beyond a reasonable doubt under *Chapman*. As we have said, by finding true the burglary circumstance attached to the count of sexual penetration standing in the kitchen, the jury found that Jones committed that offense "during the commission of a burglary of the first degree . . . with intent to commit" a sexual offense covered by the One Strike law. (§ 667.61, subds. (c), (d)(4).) Because this crime occurred *before* Jones entered C.M.'s bedroom, the jurors necessarily found beyond a reasonable doubt that he had the requisite sexual intent during the entry into the apartment. Thus, we can ascertain that the jury unanimously agreed on the unchallenged apartment-entry theory, negating any harm from the bedroom-entry theory and rendering *Sheppard*'s structural-error holding inapplicable. Likewise, the jury's agreement on the apartment entry established that the lack of a unanimity instruction did not prejudice Jones. (See *People v. Wilson* (2008) 44 Cal.4th 758, 802 [any error in omission of unanimity instruction was harmless based on jury's other finding].)

In his supplemental briefing, Jones "recognizes that, in a theoretical world where jurors understand the nuances of specific intent as well as seasoned criminal lawyers and judges [do] and are able to perfectly parse the

14

court's instructions and correctly apply the facts to those instructions, the jury's true finding [on the burglary circumstance attached to the count of sexual penetration in the kitchen] necessarily means the jurors unanimously agreed that [he] formed a sexual intent before he entered the studio apartment." But according to him, some jurors could have mistakenly "thought that they could make the true finding" so long as he formed the requisite sexual intent before committing sexual penetration in the kitchen, even if he formed it after entering the apartment. We reject Jones's position, which flies in the face of the principle that "[j]urors are presumed to be intelligent people, capable of understanding and correlating all instructions." (*People v. Ayers* (2005) 125 Cal.App.4th 988, 997; *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Jones also argues that the two juror declarations submitted with his motion for a new trial "definitely prove[]" that some jurors did not actually understand that a true finding on the burglary circumstance at issue required them to conclude he had the intent to commit a sexual offense when he entered the apartment. But as mentioned above, the trial court excluded both declarations under Evidence Code section 1150. That statute provides, "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing [the jury] to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Evid. Code, § 1150, subd. (a).) Jones does not challenge the court's evidentiary ruling, effectively conceding that the declarations were properly excluded as

15

"reflections of the jurors' mental processes." (*Guernsey v. City of Salinas* (2018) 30 Cal.App.5th 269, 283.)

Nonetheless, Jones urges that we should "not completely turn a blind eye" to these declarations when performing our harmless-error review, since "it would be a travesty of justice to maintain the fiction" that the jurors in fact agreed on when he formed the required intent. In doing so, he states that the main purpose of Evidence Code section 1150 is "to bar inquiry into jurors' thought processes in deciding allegations of juror misconduct," implying that evidence of a juror's mind state is somehow less objectionable if it does not relate to misconduct. (Boldface and italics omitted.)

We disagree with Jones that it is appropriate to consider the declarations despite Evidence Code section 1150's exclusion of evidence of a juror's mental processes. " 'This limitation prevents one juror from upsetting a verdict of the whole jury by impugning [the juror's] own or . . . fellow jurors' mental processes or reasons for assent or dissent,' " whether related to misconduct or not. (*Guernsey v. City of Salinas*, *supra*, 30 Cal.App.5th at p. 283.) " '[E]vidence that violates Evidence Code [s]ection 1150 is not merely inadmissible; it is irrelevant—'of no jural consequence.' " (*In re Hansen* (2014) 227 Cal.App.4th 906, 928–929.) Thus, we cannot rely on the declarations here for *any* purpose, and we follow other decisions in declining in particular to consider such evidence as proof on appeal that an error was prejudicial. (E.g., *Guernsey*, at pp. 282–284; *Hansen*, at p. 928.)

In short, the jury's true finding on the burglary circumstance accompanying the conviction of sexual penetration establishes that the prosecution's "ambush" of the defense and the omission of a unanimity instruction were harmless beyond a reasonable doubt. Thus, both of Jones's claims of error related to the bedroom-entry theory fail.

16

B.      *The Prosecutor Did Not Err in Closing Argument.*

Jones claims the prosecutor committed misconduct by stating in her closing argument that C.M. was "no longer an alleged victim." According to him, this "undermined the presumption of innocence" in violation of his constitutional rights to due process and a fair trial. We are not persuaded.

1.      Additional facts

Before trial, the prosecution filed a motion in limine to be permitted to refer to C.M. as a "victim." The trial court ruled that C.M. could be referred to "as an alleged victim," but not as a "victim[] because that hasn't been proven yet."

The prosecutor said that the People did not object to the term "alleged victim" but that she "want[ed] to clarify" that she could refer to C.M. as "the victim[]" in closing arguments. Jones's trial counsel objected, stating that the "presumption of innocence carries all the way into jury deliberations." The court responded, "Context is everything. Closing arguments are closing argument[s]." Thus, in the court's view, the prosecutor could use the term "victim" if it was "clear that [the People are] making the argument that this is what [the jury] should find."

During closing arguments, the prosecutor addressed the jury as follows: "When I gave my opening statement I told you that I was going to ask you when the time is right to find Jovan Jones guilty of all of the crimes that the People of the State of California have alleged against him, and that time is now. [¶] . . . [C.M.] is no longer an alleged victim." Jones's trial counsel objected, and the trial court overruled the objection, stating, "This is argument." The court also declined defense counsel's request to approach. The prosecution then continued, characterizing C.M. as a "victim[] of Jovan Jones."

17

Later, outside the presence of the jury, the trial court permitted defense counsel to further state his objection. He argued that the prosecutor's statement that "the time for saying alleged [victim] is over" was misconduct, explaining, "Mr. Jones enjoys the presumption of innocence all the way through jury deliberations. The time for saying alleged is not over[,] and . . . the case law is very clear on that."

The trial court responded that it had instructed the jury "before and after that [the prosecutor's] arguments are not the law, the law [is] as I instructed it," and "this jury has been informed time and time again throughout this process as to the presumption of innocence." The court reaffirmed its view that the prosecutor could properly "argue that the evidence has shown that this is not an alleged victim but an actual victim."

    2.    Analysis

"Under state law, ' "[a] prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct. . . . " ' [Citation.] Prosecutorial misconduct violates the federal Constitution when it results in a fundamentally unfair trial." (*People v. Steskal* (2021) 11 Cal.5th 332, 350.) Where, as here, "a claim of misconduct is based on remarks to the jury, we consider whether there is a reasonable likelihood the jury construed the remarks in an improper fashion." (*Ibid.*) In doing so, " 'we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

Jones argues that the prosecutor improperly "undermin[ed] the presumption of innocence when she stated that [C.M.] had gone from an alleged victim to a victim." " 'The presumption of innocence, although not articulated in the [federal] Constitution, is a basic component of a fair trial

18

under our system of criminal justice.' . . . '[T]he presumption of innocence continues not only during the taking of the testimony, but during the deliberations of the jury and until they reach a verdict.' " (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1405–1406.) " 'Once an otherwise properly instructed jury is told that the presumption of innocence obtains until guilt is proven, it is obvious that the jury cannot find the defendant guilty until and unless *they*, as the fact-finding body, conclude guilt was proven beyond a reasonable doubt.' " (*People v. Booker* (2011) 51 Cal.4th 141, 185 (*Booker*).) Thus, although a prosecutor should not make "statements that appear to shift the burden of proof onto a defendant (as a defendant is entitled to the presumption of innocence until the contrary is found by the jury)," it is permissible to argue that "the jury should return a verdict in [the People's] favor based on the state of the evidence presented." (*Ibid.*)

Numerous decisions have addressed whether prosecutorial statements in closing about the presumption of innocence were proper. For example, *Booker* held that the jury was not misled by a prosecutor's comments that the presumption of innocence is not permanent and " 'should have left many days ago,' " since it " 'vanishes' " once the evidence convinces the jury otherwise. (*Booker*, *supra*, 51 Cal.4th at pp. 183–185.) Other decisions have held that similar comments did not constitute prosecutorial misconduct because they amounted to argument that the evidence "proved [the] defendant's guilt beyond a reasonable doubt, i.e., the evidence overcame the presumption [of innocence]." (*People v. Panah* (2005) 35 Cal.4th 395, 463; e.g., *People v. Romo* (2016) 248 Cal.App.4th 682, 691–693 [jury told that " 'once the evidence proved to you beyond a reasonable doubt that [the defendant] committed the crime, there's no presumption of innocence' "], italics omitted; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 189 [prosecutor told jury there was " 'no

more presumption of innocence' " because " 'the case has been proved to you beyond any reasonable doubt' "], italics omitted.)

On the other hand, courts have determined that misconduct occurred where prosecutors suggested that the presumption of innocence terminated significantly earlier in the proceedings. In *People v. Cowan* (2017) 8 Cal.App.5th 1152, the Second District Court of Appeal reversed based on a prosecutor's statement that the presumption of innocence " 'is in place only when the charges are read.' " (*Id.* at pp. 1154–1155.) And in *People v. Dowdell, supra*, 227 Cal.App.4th 1388, the Sixth District Court of Appeal concluded that a prosecutor misstated the law in closing by saying that " '[t]he presumption of innocence is over' " and the defendant had " 'gotten his fair trial.' " (*Id.* at pp. 1407–1408, italics omitted.) Although *Dowdell* ultimately concluded that the error was harmless, the decision held that the fact the prosecutor "implied that the 'fair trial' was over, and with it, the jury's legal obligation to respect the presumption of innocence," rendered the closing argument improper. (*Id.* at pp. 1408–1409.)

Even if we assume that the prosecutor's comment that C.M. was "no longer an alleged victim" implied that the presumption of innocence no longer applied, it was appropriate in the context of the prosecutor's argument as a whole. Immediately before making the challenged comment, the prosecutor mentioned her earlier statement that she was "going to ask [the jury] when the time [was] right to find . . . Jones guilty" and told it that "that time is now." Thus, the prosecutor's comment conveyed that she wanted the jury to decide during deliberations that Jones was guilty, and thus that C.M. was actually a victim. Under *Booker* and similar cases, this amounted to proper argument that the evidence proved Jones's guilt beyond a reasonable doubt.

20

Jones claims these cases are distinguishable because they involved explicit statements about overcoming the presumption of innocence, which jurors would readily recognize as legal argument. He claims that in contrast, "a statement that the alleged victim is now a 'victim' directly undermines the presumption of innocence" because "reasonably intelligent jurors could view such a statement as teaching that the presumption of innocence no longer applies at this point in the case." This distinction is unpersuasive: We do not see how saying the presumption of innocence is overcome undermines that presumption any less than referring to a complaining witness as a victim.

Jones also repeatedly invokes the Fourth District Court of Appeal's statement in *Romo* that it did "not condone any statements that even remotely imply the presumption of innocence is lost before the jury returns a verdict." (*People v. Romo*, *supra*, 248 Cal.App.4th at p. 693.) But given that the prosecutor asked the jury to find Jones guilty *before* she argued that C.M. was no longer an alleged victim, there was no suggestion that the presumption of innocence disappeared before the jury considered the evidence. And as the trial court observed, the jury was instructed about the presumption of innocence and the prosecution's burden to prove Jones's guilt beyond a reasonable doubt. Thus, we conclude there is no reasonable likelihood that the jury interpreted the prosecutor's statements as Jones argues it did, defeating his claim. (See *People v. Steskal*, *supra*, 11 Cal.5th at p. 350.)

C.     *An Unauthorized Enhancement Requires a Remand for a Full Resentencing.*

Jones contends that the enhancement for using a deadly weapon under section 12022.3, subdivision (a), imposed with his conviction of attempted rape must be vacated. We accept the Attorney General's concession that this enhancement was improperly imposed.

21

As noted above, Jones was convicted of the lesser included offense of attempted rape on one of the rape counts, count five. The jury was instructed under CALCRIM No. 3130 that if it convicted Jones of this lesser included offense, it had to decide whether he "was personally *armed* with a deadly weapon in the commission of that crime." (Italics added.) The verdict form for count five stated that the jury found true "the allegation within the meaning of PC 12022.3, that while in the commission of said offense, the Defendant was in possession of a deadly weapon." On count five, the trial court imposed "a three year sentence for the enhancement for *use* of a weapon[,] which is also the low term for that." (Italics added.)

Section 12022.3 provides for two possible enhancements: "(a) A 3-, 4- or 10-year enhancement if the person uses a firearm or a deadly weapon in the commission of a violation" of a specified sexual offense, and "(b) A one-, two-, or five-year enhancement if the person is armed with a firearm or a deadly weapon." As the parties agree, the jury found only that Jones was armed with a deadly weapon under subdivision (b), not that he used such a weapon under subdivision (a). Thus, he was sentenced for the wrong enhancement, and we strike the enhancement as unauthorized. (See *People v. Scott* (1994) 9 Cal.4th 331, 354; *People v. Nguyen* (2017) 18 Cal.App.5th 260, 272.)

We also agree with the parties that a remand for a full resentencing is required. "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Here, while Jones concedes that he may be properly sentenced for the arming enhancement under section 12022.3, subdivision (b), it is unclear which of the

22

three potential terms the trial court would select. Therefore, the court must have the opportunity to reconsider the sentence in full.

Because a full resentencing is required, we need not reach Jones's other claims of error involving the sentence and the abstract of judgment. We nevertheless briefly address these claims to provide the trial court with guidance on remand. As the parties agree, it was improper to sentence Jones to both a 25-year-to-life term under section 667.61, subdivision (a), and a concurrent 15-year-to-life term under subdivision (b) of that statute for sexual penetration (count three). (See *People v. Valdez* (2011) 193 Cal.App.4th 1515, 1521 [One Strike law permits "enhanced indeterminate terms of *either* 15 or 25 years to life for those who commit enumerated felony sex offenses in specified circumstances"], italics added.) In addition, as the parties also agree, the current abstract of judgment incorrectly lists the One Strike sentences as "enhancements" (see *People v. Acosta* (2002) 29 Cal.4th 105, 118) and reflects fines and fees that the court did not impose. The court should ensure that such errors are not repeated in the new abstract of judgment.

D. *Clerical Errors in Some Minute Orders Must Be Corrected.*

Finally, Jones identifies two errors in various minute orders. The minute order from January 12, 2023, the date on which the trial court granted the prosecution's request to dismiss count nine (receiving stolen property), does not reflect this ruling. Second, the January 23 and September 14, 2023 minute orders incorrectly reflect that the jury found weapon enhancements true under section 12022.3, subdivision (a), instead of subdivision (b), for counts two (attempted sexual penetration) and five (attempted rape). We agree with Jones that these errors should be corrected.

23

III.
DISPOSITION

The enhancement for using a deadly weapon under Penal Code section 12022.3, subdivision (a), imposed on count five is stricken, and the matter is remanded for a full resentencing in accordance with section II.C. of this opinion. The clerk of the superior court is directed to amend (1) the minute order of January 12, 2023, to reflect that count nine was dismissed and (2) the minute orders of January 23 and September 14, 2023, to reflect that the weapons enhancements accompanying counts two and five were found true under Penal Code section 12022.3, subdivision (b). In all other respects, the judgment is affirmed.

_____

Humes, P.J.


WE CONCUR:



_____

Banke, J.



_____

Langhorne Wilson, J.




*People v. Jones*  A168930


25

Trial Court:

Superior Court of the City and County of San Francisco

Trial Judge:

Hon. Michael B. McNaughton

Counsel:

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, Matthew J. Eitelberg, Deputy Attorney General for Plaintiff and Respondent

*People v. Jones* A168930